IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUNDEXCHANGE, INC. | |
| Plaintiff, | |
| v. | Civil Action No. 1:13-cv-1290 (RJL) |
| SIRIUS XM RADIO, INC. | |
| Defendant. | |

**PLAINTIFF SOUNDEXCHANGE'S MOTION TO LIFT STAY
FOR THE LIMITED PURPOSE OF AMENDING ITS COMPLAINT**

Plaintiff SoundExchange, Inc. ("SoundExchange") hereby moves to lift the stay in the above-captioned case for the limited purpose of amending its Complaint.  Counsel for Sirius XM has advised that Sirius XM does not consent to this motion.

**BACKGROUND**

SoundExchange sued Sirius XM on August 26, 2013, alleging that Sirius XM had underpaid royalties to SoundExchange under the federal "statutory license" to perform copyrighted sound recordings.  ECF No. 1.  SoundExchange alleged that Sirius XM had underpaid in four respects: (1) reducing Gross Revenues by an amount it attributed to pre-1972 sound recordings (Count 1); (2) reducing Gross Revenues by an amount it attributed to non-music channels sold as part of its bundled premium subscription offerings (Count 2); (3) excluding certain revenue it received from subscriptions to the Family Friendly and Mostly Music subscription packages (Count 3); and (4) failing to pay required late fees (Count 4).  ECF No. 1, ¶¶ 42-63.  On August 25, 2014,

on Sirius XM's motion, this Court stayed the case and referred certain issues to the Copyright Royalty Board ("CRB") under the doctrine of primary jurisdiction. ECF No. 22.

In November 2014, consistent with the Court's primary jurisdiction referral, SoundExchange petitioned the CRB for a ruling that would resolve whether Sirius XM's interpretation and application of the Gross Revenues definition had been lawful. The CRB treated the petition as one to reopen the 2007-2012 satellite radio rate-setting proceeding for the limited purpose of clarifying the Gross Revenues definition. *See* Order Reopening Proceeding for Limited Purpose, *In re Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, Docket No. 2006-1 CRB DSTRA (2007-2012) (Copyright Royalty Board Dec. 9, 2014). In May 2015, the Register of Copyrights determined that the CRB had jurisdiction to do so. U.S. Copyright Office, *Scope of the Copyright Royalty Judges' Continuing Jurisdiction*, 80 Fed. Reg. 25,333 (May 4, 2015).

On January 10, 2017, the CRB issued a ruling. Ruling on Regulatory Interpretation Referred by United States District Court for the District of Columbia, *In re Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, Docket No. 2006-1 CRB DSTRA (2007-2012) (Copyright Royalty Board Jan. 10, 2017). Subsequently, the CRB withdrew that ruling and requested briefing from the parties on a number of issues related to its scope. Order Withdrawing Ruling and Soliciting Briefing on Unresolved Issues, *In re Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, Docket No. 2006-1 CRB DSTRA (2007-2012) (Copyright Royalty Board Mar. 9, 2017). The CRB ultimately issued a revised ruling, in which it concluded that (1) subject to certain conditions, the Gross Revenues definition in place for the 2007-2012 period allowed Sirius XM to exclude revenues that it deemed attributable to pre-1972 recordings; and

(2) the Gross Revenues definition in place for that period did not permit Sirius XM to exclude revenue that it attributed to non-music channels sold as part of a larger bundle including music channels.  Amended Restricted Ruling on Regulatory Interpretation Referred by United States District Court for the District of Columbia, *In re Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, Docket No. 2006-1 CRB DSTRA (2007-2012) (Copyright Royalty Board Sept. 12, 2017).

The CRB's ruling still is subject to review for legal error by the Register of Copyrights within 60 days (with the potential for a subsequent appeal to the D.C. Circuit).  In the meantime, SoundExchange seeks to lift the stay in this Court for the limited purpose of filing an amended complaint. A copy of the amended complaint is attached as Exhibit 1 to the Motion for Leave to File Proposed First Amended Complaint Under Seal, filed separately on October 13, 2017.  The amendments consist principally of (1) additional claims based on underpayments coming to light as a result of an audit of Sirius XM's royalty payments for the 2010-2012 period; and (2) clarification that SoundExchange's claim in Count 2 applies not only to Sirius XM's Gross Revenues calculations and royalty payments during the 2007-2012 rate period, but also to its calculations and payments during the 2013-2017 rate period.[1]  In addition, the proposed Amended Complaint

---

[1] Count 2 alleged that Sirius XM had improperly excluded from Gross Revenues amounts that it attributed to the sale of access to certain non-music channels sold as part of a bundle including music channels.  *See* ECF No. 1, ¶¶ 26-34, 48-53.  Sirius XM claimed that these exclusions were authorized by paragraph (3)(vi)(B) of the Gross Revenues definition first promulgated for the 2007-2012 period, which permitted the exclusion of "[r]evenues recognized by [Sirius XM] for the provision of . . . [c]hannels, programming, products and/or other services offered for a separate charge where such channels use only incidental performances of sound recordings."  37 C.F.R. § 382.11 (2008) (definition of Gross Revenues).  The CRB's September 12 ruling held that these exclusions were impermissible because channels offered as part of a bundle are not "offered for a separate charge," as required by the regulation.  For the 2013-2017 period, the applicable paragraph of the Gross Revenues definition remained the same.  *See* 37 C.F.R. § 382.11.  Sirius XM, for its part, continued to exclude from Gross Revenues (purportedly on the authority of that paragraph) amounts that it attributed to the sale of access to non-music channels sold as part of a

deletes former Count 3 and makes certain other changes shown in redline in Exhibit 2 to the Motion for Leave to File Proposed First Amended Complaint Under Seal.

## ARGUMENT

This Court's inherent power to manage its own docket encompasses the power to impose and lift stays, as a matter of judicial discretion. *See, e.g.*, *Milton Hosp. v. Thompson*, No. 04-1497, 2007 WL 1549078, at *2 (D.D.C. May 5, 2007). A party may amend its complaint at any time with leave of the court, which "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Requests for leave to amend complaints are liberally granted. *E.g., Brink v. Continental Ins. Co.*, 787 F.3d 1120, 1128 (D.C. Cir. 2015), *cert. denied*, 136 S.Ct. 824 (2016). In fact, a court must provide a reasoned justification for *denying* leave to amend. *Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016). Here, the Court should lift the stay for the limited purpose of allowing SoundExchange to file an amended complaint.

*First*, the added allegations are closely related to those in SoundExchange's initial complaint. As explained above, they consist principally of (1) clarification that SoundExchange's claim relating to bundled non-music channels relates not only to the 2007-2012 rate period but to the subsequent rate period as well; and (2) claims based on underpayments coming to light as a result of an audit of Sirius XM's royalty payments for 2010-2012.

*Second*, at present, SoundExchange is not asking the Court to do anything beyond allowing it to amend its complaint. There would be no need for Sirius XM to respond at this time, nor would

---

bundle containing music channels. *See* Amended Compl. ¶¶ 30–41, 58–63. SoundExchange believes that the original complaint encompassed these post-2012 exclusions, *see* ECF No. 1, ¶ 51; *id.* at ¶ 4 n.1, but, out of an abundance of caution, seeks to clarify as much in an amended complaint.

the Court have to address the legal or factual merits of any claim.  Instead, the Court would reinstate the stay and defer any further proceedings (including any response to the amended complaint on Sirius XM's part) until a future time.

*Third*, lifting the stay and permitting SoundExchange to amend its complaint does not create a risk of inconsistent legal rulings.  SoundExchange's amendments would not call on the Court to rule on matters that the CRB has already decided.  Instead, to the extent that the CRB has reached particular conclusions, the Court would be asked merely to apply those conclusions.

*Finally*, lifting the stay to permit SoundExchange to amend its complaint would not prejudice Sirius XM, nor would it reward any undue delay on SoundExchange's part.  *Compare Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (upholding denial of leave "only days before trial," and "one year after summary judgment motions were decided"); *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012) (upholding denial of leave to amend after close of discovery); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987) (upholding denial of leave after discovery had closed and summary judgment motions had been decided); *see generally Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing justifications to deny a motion for leave to amend).  At the risk of stating the obvious, this case is not nearing completion in this Court.  Although the parties jointly submitted a Rule 26 report, discovery was stayed (on Sirius XM's motion) almost immediately after the parties finished briefing the primary-jurisdiction motion.  No Rule 16 conference has been held.  Indeed, aside from the briefing and decision on Sirius XM's primary-jurisdiction motion, no proceedings of substance have taken place here.

## CONCLUSION

The stay should be lifted for the limited purpose of allowing SoundExchange to amend its complaint.

Dated: October 13, 2017                                  Respectfully submitted,

                                                         /s/ David A. Handzo
David A. Handzo (D.C. Bar # 384023)
Joshua M. Segal (D.C. Bar # 975949)
Previn Warren (D.C. Bar # 1022447)
Jenner & Block LLP
1099 New York Ave., N.W.
Washington, D.C. 20001
(202) 639-6000
dhandzo@jenner.com
jsegal@jenner.com
pwarren@jenner.com

*Counsel for Plaintiff SoundExchange, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of October, 2017, the foregoing motion was electronically filed using the CM/ECF system, which shall send notice to all counsel of record.

                                                 /s/ David A. Handzo

                                                 David A. Handzo